IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KING MICHAEL OLIVER,<br>*also known as*<br>MICHAEL OLIVER, #B89925,<br><br>    Plaintiff,<br><br>vs.<br><br>LT. RENSING,<br>SGT. RITCHEY,<br>and AARON J. CONEY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 19-cv-00785-NJR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

Plaintiff Michael Oliver, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Shawnee Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations at Vandalia Correctional Center ("Vandalia"). (Doc. 1, pp. 1-6). Oliver claims that Defendants retaliated against him for filing a grievance by forcefully removing him from his cell in handcuffs, attempting to take his legal mail, and placing him in segregation. (*Id*. at pp. 1-2). They also denied medical treatment for his resulting injuries. Oliver seeks money damages and emergency relief.[1] (*Id*. at pp. 2-3).

The Complaint is subject to screening under 28 U.S.C. § 1915A, which requires the Court to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

---

[1] The Court already considered and denied Oliver's two requests for emergency relief. (Docs. 4 and 10).

1

## The Complaint

On July 15, 2019, Oliver filed a grievance against Lieutenant Rensing after he threw Oliver's Bible on the floor. (Doc. 1, pp. 1-3). The following day, Rensing retaliated against Oliver by forcefully removing him from his cell. (*Id*. at pp. 1-2). The officer cuffed Oliver's wrists tightly, slammed him into a wall, and applied pressure to his neck and back. (*Id*. at p. 2). Meanwhile, Sergeant Ritchey and Officer Coney entered Oliver's cell and attempted to take his legal mail, but Officer Samson stopped them.[2] (*Id*.). Defendants provided no medical treatment for Oliver's bruised wrists, sore neck, or back injury, instead allowing him "wallow in [his] pain and suffering." (*Id*.). The incident "landed" Oliver in segregation on July 22, 2019. (*Id*. at p. 1). Rather than filing a grievance to address these issues, Oliver prepared the underlying Complaint on July 16, 2019. (*Id*. at p. 4).

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following Counts:

> **Count 1:** First Amendment retaliation claim against Rensing for responding to Oliver's grievance filed July 15, 2019, by tightly cuffing Oliver's wrists and forcing him from his cell on July 16, 2019.
>
> **Count 2:** Eighth Amendment claim against Rensing for using excessive force against Oliver while removing him from his cell on July 16, 2019.
>
> **Count 3:** First and/or Fourteenth Amendment claim against Ritchey and Coney for attempting to take Oliver's legal mail on July 16, 2019.
>
> **Count 4:** Eighth Amendment deliberate indifference to medical needs claim against Rensing, Ritchey, and Coney for allowing Oliver to "wallow in [his] pain and suffering" following the incident on July 16, 2019.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

---

[2] Officer Samson is not named as a defendant, and Oliver brings no claims against him.
[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Discussion**

Oliver filed his Complaint prematurely. He prepared it on July 16, 2019—*before* the events giving rise to Counts 3 and 4 came to pass and on the *same date* the events giving rise to Counts 1 and 2 occurred. (Doc. 1). He admittedly made no effort to address these claims at Vandalia by filing grievances before filing this action. (*Id.* at p. 1). This presents two problems: ripeness and exhaustion.

*1.      Ripeness*

A claim is not fit for adjudication if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985)). Counts 3 and 4 are not yet ripe under this standard. Both claims hinge on events that have not yet occurred and may never occur.

With respect to the denial of access to courts claim in Count 3, Oliver complains of interference with his legal mail that was thwarted by Officer Samson on the same date Oliver prepared his Complaint, *i.e.*, July 16, 2019. As of July 16, 2019, Oliver was not prevented from pursuing a legal claim based on the interference with his legal mail; he mailed his Complaint to the Court on that date. Whether he was prevented from doing so at some later date or in connection with some other claim is unclear and is not the subject of this action.

With respect to the deliberate indifference to medical needs claim in Count 4, Oliver complains of medical treatment he was denied for injuries Rensing inflicted or exacerbated on the same date he prepared the Complaint, *i.e.*, July 16, 2019. As of July 16, 2019, Oliver claims he was allowed to "wallow in [his] pain and suffering" but he makes no claim that he actually requested and was denied treatment of the injuries that Rensing inflicted. (Doc. 1, p. 2). Whether a denial later occurred—or ever occurred—is beyond the scope of this suit.

*2.    Exhaustion*

The second problem is posed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA requires a prisoner to exhaust all available administrative remedies before filing suit under Section 1983. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Unexhausted claims may not be brought to court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The exhaustion requirement depends on the procedures established by the State in which the prison is located. *Jones*, 549 U.S. at 218. And, unless a plaintiff has properly complied with that State's administrative process, exhaustion has not occurred. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Illinois inmates must adhere to the IDOC's Grievance Procedures for Offenders in order to properly exhaust their claims. *See* 20 ILL. ADM. CODE § 504.810.[4] In the first sentence of his Complaint, Oliver proclaims he has made no attempt to exhaust his claims at Vandalia because "[t]he Grievance Procedure here is totally FUTILE!" (Doc. 1, p. 1). Oliver is an experienced litigant. He is well aware of the PLRA's requirement that he exhaust all available administrative remedies *before* filing suit under Section 1983. *Johnson*, 272 F.3d at 521. He should also be aware that there is no futility exception to the requirement. *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171 (7th Cir. 2010) (citing *Booth v. Churner*, 532 U.S. 731 (2001)).

---

[4] Pursuant to the IDOC's Grievance Procedures, prisoners must first speak with their counselor about the issues they raise, and if unresolved, then file a formal grievance within 60 days of the events or occurrence with the grievance officer. 20 ILL. ADM. CODE § 504.810(a). The grievance officer must review the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"). 20 ILL. ADM. CODE § 504.830(e). The prisoner then has the opportunity to review the CAO's response, and if unsatisfied, appeal to the IDOC Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. 20 ILL. ADM. CODE § 504.830(d); 20 ILL. ADM. CODE § 504.850. The ARB is then required to provide a written report to the IDOC Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.850(e), (f).

And, although he offers anecdotal evidence to support his futility argument, it cannot save his claims. (Doc. 1, pp. 1-2, 6-7). Oliver explains that he was unable to use the prison grievance process to obtain necessary medical care for a prior and mostly unrelated neck and back injury he sustained on July 2, 2019, when an unknown officer attacked him in his sleep and tried to "paral[y]ze [him] from the neck down." (*Id*. at p. 2). Oliver sought treatment for his injuries, but claims that it was "constantly refused." (*Id*.). Oliver provides a copy of one grievance he filed with Warden Waggoner on July 6, 2019 (*i.e.*, Exhibit 10). (*Id*. at pp. 2, 5-6). There, he acknowledges treatment with Motrin, but complains that it contained "[r]ed (dye) 40." (*Id*. at pp. 5-6). He claims that this treatment with toxic medicine amounts to *non*treatment. (*Id*.). Exhibit 10 does not demonstrate the ineffectiveness of the grievance process in resolving Counts 1, 2, 3, and 4; it reflects Oliver's disagreement with a treatment decision that is not at issue here.[5]

Because Oliver admittedly made no effort to exhaust his claims before filing suit, this case shall be dismissed. Although a plaintiff's failure to exhaust is usually an affirmative defense, dismissal of a case is appropriate "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous." *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002); *Jones*, 549 U.S. at 214-15. Oliver's admission, combined with the timeline of events giving rise to this action, demonstrate his clear failure to exhaust administrative remedies. Therefore, this case shall be dismissed without prejudice. *Walker*, 288 F.3d at 1009 (citing cases). Once he properly exhausts his administrative remedies, Oliver may file a new action, subject to the statute of limitations and payment of a new filing fee.

---

[5] Oliver does not name the unknown officer or Warden Waggoner as defendants in this action, and he brings no claim against them for the attack and injuries he sustained on July 2, 2019, or the denial of medical care thereafter.

**Disposition**

**IT IS ORDERED** that the Complaint (Doc. 1) and this entire action are **DISMISSED** without prejudice based on Oliver's failure to exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a). This includes **COUNTS 1, 2, 3,** and **4**, which are **DISMISSED** without prejudice against Defendants **RENSING, RITCHEY,** and **CONEY**.

Oliver is **ADVISED** that this dismissal does **not** count as a "strike" under 28 U.S.C. § 1915(g). *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010) (dismissal of action for failure to exhaust does not incur "strike" under PLRA). Oliver's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1).

If Oliver wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Oliver does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2). Moreover, if the appeal is found to be nonmeritorious, Oliver may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  September 27, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**